# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA MARIE TORRECILLAS, | Case No.  1:21-cv-01703-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 13, 14) |
| Defendant. | |

## I.

## INTRODUCTION

Plaintiff Lisa Marie Torrecillas ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Social Security benefits pursuant to Title XVI of the Social Security Act.  Defendant filed a cross-motion for summary judgment and opposition to Plaintiff's brief.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]  For the reasons set forth below, Plaintiff's appeal shall be denied and

---

[1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 6, 9, 10.)

1

Defendant's cross-motion for summary judgment shall be granted.

## II.

## BACKGROUND[2]

On April 24, 2018, Plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI, alleging disability beginning January 21, 2018.[3]  (Admin. Rec. ("AR") 221–33, ECF Nos. 8-1, 8-2.)

Plaintiff's claim was initially denied on October 10, 2018, and denied upon reconsideration on January 11, 2019.  (AR 130–34, 136–41.)  On August 18, 2020, Plaintiff, represented by counsel,[4] appeared via telephonic conference for an administrative hearing before the Administrative Law Judge Debra J. Denney (the "ALJ").  (AR 45–71.)  Vocational expert ("VE") Daniel B. Best also testified at the hearing.  On September 2, 2020, the ALJ issued a decision denying benefits.  (AR 22–39.)  On October 26, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (AR 11–16.)

Plaintiff initiated this action in federal court on November 30, 2021, and seeks judicial review of the denial of her application for benefits.  (ECF No. 1.)  The Commissioner lodged the administrative record on June 17, 2022.  (ECF No. 8.)  On September 13, 2022, Plaintiff filed an opening brief.  (ECF No. 13.)  On October 25, 2022, Defendant filed a cross-motion for summary judgment and brief in opposition to Plaintiff's brief.  (ECF No. 14.)  No reply was filed and the matter is deemed submitted on the pleadings.

///

---

[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

[3] While Plaintiff's complete medical history (*i.e.*, records of a claimant's medical sources covering at least the 12 months preceding the month in which an application is filed) must be considered for purposes of her application, 20 C.F.R. § 416.912, the Court notes that SSI benefits are not payable prior to the month following the month in which the application was filed, 20 C.F.R. § 416.335, and therefore the ALJ's disability determination is whether Plaintiff was under a disability as of the date the application was filed.

[4] Plaintiff was represented by attorney Jonathan O. Pena during the administrative proceedings.  Plaintiff continues to be represented by Mr. Pena's law firm in the instant matter.  (See AR 25; ECF No. 13.)

# III.

# LEGAL STANDARD

## A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[5] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[6] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is

---

[5] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[6] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only SSI benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to the instant matter.

on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e);  Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[7]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

///

---

[7] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

**B.    Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard."  Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout, 454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

1   for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is

2   the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart,

3   400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

The ALJ conducted the five-step disability analysis and made the following findings of fact and conclusions of law as of the date of the decision, September 2, 2020 (AR 27–34):

At step one, the ALJ determined Plaintiff has not engaged in substantial gainful activity since April 24, 2018, the application date.  (AR 27 (citing 20 C.F.R. §§ 416.971 et seq.).)

At step two, the ALJ determined Plaintiff has the following severe impairments: degenerative disc disease, carpal tunnel syndrome, morbid obesity, and PTSD.  (Id. (citing 20 C.F.R. § 416.920(c)).)

At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (AR 27–29 (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926).)

In reaching this decision, the ALJ considered Plaintiff's severe physical impairments under the listings, specifically Listing 1.04 (disorder of the spine).  However, the ALJ found no evidence of nerve root compression or compromise; therefore, the ALJ concluded Plaintiff does not meet the listing.

The ALJ also considered Plaintiff's mental impairment, and determined it did not meet or medically equal the criteria of Listing 12.15 (trauma and stressor-related disorders).  More specifically, the ALJ determined Plaintiff does not satisfy the paragraph B criteria because her limitations in the four broad functional areas are all of mild and moderate severity.[8]  (AR 28–29.)

---

[8] The "paragraph B criteria" evaluates mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme."  Id.  To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning.  Id.  An "extreme" limitation is the inability to function independently, appropriately, or

The ALJ also considered the paragraph C criteria and determined the record does not establish the presence of paragraph C criteria.  (AR 29.)

Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform

> **light work as defined in 20 CFR 416.967(b).  The claimant can frequently but not constantly perform fine and gross manipulations bilaterally.  The claimant can perform simple, routine, and repetitive tasks.  The claimant can engage in no teamwork, but can interact appropriately with coworkers and supervisors.  The claimant can have brief, occasional contact with the public.  The claimant would do best in a position where independent work was acceptable.  The claimant can accept constructive criticism from supervisors.**

(AR 29–32 (citing 20 C.F.R. § 416.929, and SSR 16-3p, underline available at 2017 WL 5180304 (Oct. 25, 2017)) (emphasis in original).)

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  (AR 32–33 (citing 20 C.F.R. § 416.965).)

At step five, the ALJ noted Plaintiff was born on April 14, 1972, and was 46 years old (which is defined as a younger individual age 18–49) on the date the application was filed; Plaintiff has at least a high school education; and transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferrable job skills.  (AR 33 (citing 20 C.F.R. §§ 416.963, 416.964; SSR 82-41, underline available at 1982 WL 31389 (Jan. 1, 1982); 20 C.F.R. Part 404, Subpart P, Appendix 2).)  Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 C.F.R. §§ 416.969, 416.969(a)), such as:

- Housekeeping Cleaner (Dictionary of Occupational Titles ("DOT") 323.687-014), a light exertional work position with a specific vocational preparation ("SVP") level of 2, and approximately 660,500 jobs in national economy;

- Floor Sweeper (DOT 381.687-030), a light exertional work position with an SVP of 2,

---

effectively, and on a sustained basis.  <u>Id.</u>  A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  <u>Id.</u>  A "moderate" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair."  <u>Id.</u>  And a "mild" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "slightly limited."  <u>Id.</u>

and approximately 90,500 jobs in national economy; and

- <u>Bench Assembler</u> (DOT 706.684-042), a light exertional work position with an SVP of 2, and approximately 27,000 jobs in national economy.

(AR 33–34.)   With respect to the identified jobs, the ALJ noted the VE's testimony was consistent with the DOT and, with respect to the specified RFC limitations, the VE's testimony was based on his professional experience.   (AR 34.)

Therefore, the ALJ found Plaintiff has not been under a disability, as defined in the Social Security Act, since April 24, 2018, the date the application was filed.   (<u>Id.</u> (citing 20 C.F.R. § 416.920(g)).)

**V.**

**DISCUSSION**

On appeal, Plaintiff asserts a single challenge to the ALJ's decision: the ALJ's RFC is unfounded because the ALJ improperly evaluated the medical opinion evidence.   (ECF No. 13 at 7–11.)

### A.    Legal Standard

The RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.   20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.945(a); <u>see also</u> <u>Valencia v. Heckler</u>, 751 F.2d 1082, 1085 (9th Cir. 1985) (RFC reflects current "physical and mental capabilities"); SSR 96-8p, at *2.   Thus, it represents the maximum amount of work the claimant is able to perform based on all the relevant evidence in the record.   <u>See id.</u>; <u>see also</u> 20 C.F.R. § 416.945(a)(3) (RFC determination must be "based on all of the relevant medical and other evidence.").   As previously noted, the RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.   <u>See</u> 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c); <u>Vertigan</u>, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.") (citing 20 C.F.R. § 404.1545).   And where "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict."   <u>Benton v. Barnhart</u>, 331 F.3d 1030, 1040 (9th Cir. 2003); <u>Batson</u>, 359 F.3d at 1195.

In reviewing whether an ALJ committed error in determining the RFC, the relevant inquiry is whether the medical evidence supports the ALJ's finding.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173–74 (9th Cir. 2008) (holding the RFC assessment adequately captures restrictions if it is consistent with the concrete limitations in the medical opinions); see also Schneider v. Comm'r, 433 Fed. App'x. 507, 509 (9th Cir. 2011) (ALJ's failure to address claimant's migraines was harmless because medical record did not support finding that migraines would affect claimant's functioning at work).  Accordingly, "[t]he ALJ's RFC determination need not precisely reflect any particular medical provider's assessment."  Althoff-Gromer v. Comm'r of Soc. Sec., No. 2:18-cv-00082-KJN, 2019 WL 1316710, at *13 (E.D. Cal. Mar. 22, 2019) (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222–23 (9th Cir. 2010)); see also Chavez v. Colvin, 654 Fed. App'x 374, 375 (10th Cir. 2016).  This is because it is within the ALJ's province to synthesize the medical evidence.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1042 (9th Cir. 2007).

Where, as here, a claim is filed after March 27, 2017, the revised Social Security Administration regulations apply to the ALJ's consideration of the medical evidence.  See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources.  See 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [she] considered each medical opinion or prior administrative medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).  As recently acknowledged by the Ninth Circuit, this means the 2017 revised Social Security regulations abrogate prior precedents requiring an ALJ to provide "specific and legitimate reasons supported by substantial evidence in the record" for rejecting the opinion of a

1   treating physician.  Woods v. Kijakazi, 32 F.4th 785, 788–92 (9th Cir. 2022).

2          Instead, "[w]hen a medical source provides one or more medical opinions or prior

3   administrative medical findings, [the ALJ] will consider those medical opinions or prior

4   administrative medical findings from that medical source together using" the following factors:

5   (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5)

6   other factors that "tend to support or contradict a medical opinion or prior administrative medical

7   finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)–(5).  The most important factors to be applied in

8   evaluating the persuasiveness of medical opinions and prior administrative medical findings are

9   supportability and consistency.  20 C.F.R. §§ 404.1520c(a), (b)(2).  Regarding the supportability

10  factor, the regulation provides that the "more relevant the objective medical evidence and

11  supporting explanations presented by a medical source are to support his or her medical

12  opinion(s), the more persuasive the medical opinions … will be."  20 C.F.R. § 404.1520c(c)(1).

13  Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence

14  from other medical sources and nonmedical sources in the claim, the more persuasive the medical

15  opinion(s) … will be."  20 C.F.R. § 404.1520c(c)(2).

16         Accordingly, the ALJ must explain in her decision how persuasive she finds a medical

17  opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. §

18  404.1520c(b)(2).  The ALJ "may, but [is] not required to, explain how [she] considered the [other

19  remaining factors]," except when deciding among differing yet equally persuasive opinions or

20  findings on the same issue.  20 C.F.R. § 404.1520c(b)(2)–(3).  Further, the ALJ is "not required to

21  articulate how [she] considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d).

22  Nonetheless, even under the new regulatory framework, the Court still must determine whether

23  the ALJ adequately explained how she considered the supportability and consistency factors

24  relative to medical opinions and whether the reasons were free from legal error and supported by

25  substantial evidence.  See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3

26  (C.D. Cal. May 14, 2021).

27     **B.    Analysis**

28         Plaintiff maintains the ALJ failed to offer legitimate reasons for rejecting the opinions of

four sources: Dr. Ekram Michiel, Dr. Aquino-Caro, Licensed Therapist Patricia Newsome, and Licensed Therapist Jeffrey Thomas.  (ECF No. 13 at 8.)  Notably, however, Plaintiff does not appear to take issue with the ALJ's evaluation of the opinion evidence with respect to Dr. Jane Cormier (who affirmed Dr. Aquino-Caro's opinion at the reconsideration level).[9]  In addition, the Court notes Plaintiff does not challenge the ALJ's determination at steps two and three that she does not satisfy the paragraph B criteria because she experiences only mild to moderate limitations in the broad functional categories arising from her mental impairment; nor does Plaintiff challenge the ALJ's adverse credibility determination with respect to her subjective testimony, the ALJ's discounting of Plaintiff's lay witness testimony, or the ALJ's reliance on the VE's testimony to determine available national jobs.  Accordingly, any potential challenges relating to these issues are also deemed waived.  Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash., 350 F.3d at 929.  Plaintiff's concessions on these related issues are also relevant to the Court in determining whether the ALJ's evaluation of the medical and opinion evidence is supported by substantial evidence in the record, as discussed herein.

    1.   <u>Drs. Michel and Aquino-Caro</u>

With respect to Drs. Michel and Aquino-Caro, Plaintiff argues the ALJ did not provide sufficient reasons based on substantial evidence in the record to discount the doctors' opinions, and that the ALJ mischaracterized the evidence.  (ECF No. 13 at 9.)

    **a.**    **Dr. Michiel**

Consulting Dr. Michiel conducted a psychiatric evaluation of Plaintiff on August 25, 2018, and issued an opinion as to her limitations.  (AR 504–07.)  Plaintiff's chief complaint was social anxiety and PTSD.  (AR 504.)  Plaintiff reported she has been in abusive relationships since she was five years old, including four abusive relationships in her adult life—two of which

---

[9] Furthermore, based on the captioning and substantive content of Plaintiff's argument, it appears Plaintiff is challenging the medical opinions and RFC determination with respect to her mental impairments only.  Because Plaintiff only addresses issues related to her mental impairments in her briefing, the Court shall also only address the ALJ's decision as it pertains to Plaintiff's mental impairments and not her physical impairments; Plaintiff's silence regarding her physical impairments constitutes a waiver of arguments pertaining to these issues.  See Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) (stating court "will not consider any claims that were not actually argued in appellant's opening brief" and will only "review … issues which are argued specifically and distinctly in a party's opening brief.").

involved Plaintiff's ex-husbands.  Plaintiff reported the last man who abused her went to jail and, when he was released, he found Plaintiff and took her hostage for two months; this occurred on May 31, 2018 (approximately four months after the alleged date of onset of Plaintiff's disability, January 21, 2018).  Plaintiff complained of being unable to sleep at night, having nightmares that wake her up in a panic, flashbacks, being anxious around people, feeling fearful, helpless, and hopeless, and feeling extremely paranoid that everyone will hurt her.  (AR 505.)  She has no past psychiatric hospitalizations.  She takes Xanax.  She graduated high school and attended "some college."  Plaintiff last worked as an in-home care provided for her father, who died in January 2018.  This is also when Plaintiff's alleged date of onset occurred.  Plaintiff reported to Dr. Michiel she did not have any place to live, and was staying with friends.  Plaintiff reported she is able to take care of her personal hygiene, shop, cook, and do household chores, and she enjoys poetry.  (AR 505–06.)  Dr. Michiel observed Plaintiff as unkempt, poorly groomed, poorly dressed, and very guarded during her interview.  (AR 506.)  Plaintiff was openly crying during her interview and having panic when talking about her trauma.  Dr. Michiel noted Plaintiff's thought process was goal-directed, thought content was guarded, vigilant, and paranoid.  She was oriented to person, place, and date.  Testing revealed Plaintiff was able to do a digit span of 5/5 forward and 2/5 backwards correctly; she could recall three of three items immediately, but nothing after five minutes; she was able to do simple math calculations; she knew the name of the current President; she demonstrated adequate judgment/insight and abstract thinking; and she could recall receiving her high school diploma but was confused about the date of her children's birthdays.  Dr. Michiel diagnosed Plaintiff with PTSD and a GAF of 48.  (AR 507.)  He opined Plaintiff is able to handle her own funds, but would be unable to maintain attention and concentration to carry out simple job instructions.  (Id.)

The ALJ found the opinion of Dr. Michiel to be not persuasive.  (AR 31.)  The ALJ found Dr. Michiel's opinion exceeded the scope of the objective evidence and was therefore not supported by and inconsistent with the record because "there are many examinations showing normal thought content, alertness, intact digit span testing, successful performance of math calculations, and the ability to recall historical information."  (Id. (citing AR 506, 573, 583).)

Further, the ALJ found Dr. Michiel's opinion was inconsistent with the record because he failed to provide limitations regarding Plaintiff's ability to work around the public and engage in teamwork, despite medical records indicating rapid and pressured speech, guarded thought content, paranoia, unkempt appearance, anxiety, and panic.  (Id. (citing AR 440, 444, 506, 514).)

Incongruity between a doctor's opinion and the medical records constitutes substantial evidence to support an ALJ's reason for rejecting the physician's opinion of the patient's limitations.  Tommasetti v. Astrue, 533 F.3d 1035, 1041  (9th Cir. 2008); Ford, 950 F.3d at 1155; Batson, 359 F.3d at 1195 (inconsistency with the majority of objective medical evidence is an appropriate reason for rejecting a physician's opinion); Andrews, 53 F.3d at 1041 (clinical findings contradicting opinion constitute substantial evidence); see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings.").  Accordingly, the Court finds the ALJ has provided sufficient reasons in support of her evaluation of Dr. Michiel's opinion that is supported by substantial evidence.

### b.    Dr. Aquino-Caro

State Agency Dr. Aquino-Caro reviewed Plaintiff's records up to September 6, 2018, and initially issued an opinion of disability that was based largely on Dr. Michiel's statement.  (See AR 78–85.)   As to the paragraph B criteria, Dr. Aquino-Caro found that Plaintiff's severe impairments of anxiety and trauma resulted in mild limitations with respect to her ability to understand, remember, or apply information; moderate limitations with respect to ability to interact with others; marked limitations in ability to concentrate, persist, or maintain pace; and moderate limitations in ability to adapt or manage oneself.  (AR 79.)  More specifically, Dr. Aquino-Caro determined Plaintiff was markedly limited in her ability to carry out detailed instructions (AR 81), and she was capable of simple repetitive tasks but was not able to sustain them to complete a 40-hour workweek.  (AR 77, 81–82.)  However, after a "quality check review," Dr. Aquino-Caro issued a revised opinion on September 13, 2018.  (AR 92–109.)  In his updated statement, Dr. Aquino-Caro opined that, with continuing treatment and compliance with

medications, Plaintiff's symptoms will be nonsevere by March 2019.  This adjustment was based on Dr. Aquino-Caro's note that Plaintiff's depressive symptoms were deemed secondary to situational issues, the loss of her job, being temporarily homeless, and her father passing away. (Id.)  In his revised opinion, Dr. Aquino-Caro opined that Plaintiff had no mental functional limitations.

The ALJ found the opinion of Dr. Aquino-Caro to be not persuasive.  (AR 31.)  The ALJ found Dr. Aquino-Caro's opinion that Plaintiff had no mental functional limitations was unsupported by and inconsistent with medical records showing Plaintiff had impaired memory, difficulty concentrating, and some trouble recalling the dates of her children's birthdays.  (Id. (citing AR 506, 510).)  Thus, the ALJ determined Dr. Aquino-Caro should have included limitations to simple, routine, and repetitive tasks.  (Id.)  For the same reasons discussed with respect to Dr. Michiel's opinion, the ALJ also determined Dr. Aquino-Caro should have provided limitations in Plaintiff's ability to work around the public and engage in teamwork.  (Id.)

The Court finds the aforementioned medical records cited by the ALJ constitute substantial evidence.  Tommasetti, 533 F.3d at 1041; Ford, 950 F.3d at 1155; Andrews, 53 F.3d at 1041; Batson, 359 F.3d at 1195.  Thus, the ALJ has provided sufficient reasons in support of her evaluation of Dr. Aquino-Caro's opinion that is supported by substantial evidence.

In disputing the ALJ's evaluation of the medical opinions of Drs. Michiel and Aquino-Caro, Plaintiff asserts "the ALJ either rejected or ignored every opinion regarding Plaintiff's capacity to perform work."  (ECF No. 13 at 10.)  However, this statement is conclusory.  Beyond this general assertion, Plaintiff does not point to medical treatment notes of any substantive portions of the record that the ALJ allegedly ignored.  Indeed, Plaintiff acknowledges that the record is "sparse" with respect to any evidence of treatment following the SSA's rulings on reconsideration.  (Id.)  Further, it appears Plaintiff is referring to the same medical opinions for which this court has determined the ALJ provided sufficient reasons, supported by substantial evidence, to discount.  Accordingly, Plaintiff's argument is unavailing.

Alternatively, Plaintiff argues the ALJ mischaracterized the evidence.  In support of this argument, Plaintiff provides two examples.  First, Plaintiff asserts the ALJ mischaracterized the

record when she referred to evidence of "intact digit span testing and successful performance of math calculations" but cites to three entries in the record that do not demonstrate such findings. (Id. at 9.)  However, the ALJ accurately noted the record demonstrated Plaintiff "was able to perform a digit span of five forward and two backwards."  (AR 28 (citing AR 506).)  Moreover, the ALJ considered this evidence in her evaluation of the medical opinions when she discounted Dr. Aquino-Caro's opinion for failing to include limitations to simple, routine, and repetitive tasks and Plaintiff's ability to work around the public and engage in teamwork.  As to Dr. Michiel's opinion, it was also reasonable for the ALJ to, in synthesizing the medical evidence as was required, consider Plaintiff's ability to perform a digit span of five forward in determining that Plaintiff's limitations were not as severe as Dr. Michiel opined, while still acknowledging that Plaintiff's difficulty in only performing a digit span of two backwards contributed somewhat to consideration of the severity of Plaintiff's impairments.  Lingenfelter, 504 F.3d at 1042.  Thus, Plaintiff's first argument is unavailing.

Second, Plaintiff appears to challenge the ALJ's characterization of the record as including many "otherwise normal" mental status exam results where the notes also included findings of tearfulness, panic, vigilance, and paranoia.  (ECF No. 13 at 9.)  The Court rejects this argument as largely semantical.  At most, Plaintiff's argument constitutes an attempt to present an alternative interpretation of the evidence.  However, this is not sufficient to establish reversible error and the Court "will not engage in second-guessing."  Thomas, 278 F.3d at 959; Ford, 950 F.3d at 1154; Burch, 400 F.3d at 679.

Thus, the Court finds the ALJ adequately explained how she considered the supportability and consistency factors relative to the medical opinions of Drs. Aquino-Caro and Michiel, and her analysis is supported by substantial evidence in the record. Ford, 950 F.3d at 1154; Martinez V., 2021 WL 1947238, at *3.

### 2.    Licensed Therapists Patricia Newsome and Jeffrey Thomas

With respect to the opinions of Licensed Therapists Newsome and Thomas, Plaintiff argues the ALJ failed to summarize or discuss their opinions whatsoever, thus failing to address "relevant medical evidence" in the record and failing to identify a legitimate reason for rejecting

1    the opinions.  (ECF No. 13 at 8.)

2         The "opinions" to which Plaintiff refers are both two-page check-the-box forms generated

3    by Fresno County Department of Social Services titled "Verification of Incapacity."  (AR 238–

4    39, 240–41.)  The forms appear to relate to an application for "General Relief" from the County,

5    but no other application documents are included or referenced.  The July 12, 2018 verification

6    form signed by Ms. Newsome, in its entirety, indicates the following: Plaintiff's mental

7    condition—specifically, her social anxiety, difficultly being around others, history of trauma,

8    hypervigilance, avoidance, and intrusive/unwanted thoughts and flashbacks—prevents or

9    substantially reduces her ability to engage in work or training until January 12, 2019; and Plaintiff

10   is not receiving or seeking treatment.  (AR 237–38.)  The November 29, 2018 verification form

11   signed by Mr. Thomas indicates Plaintiff's mental condition—described as symptoms of

12   depression and PTSD—temporarily prevents her from returning to work until November 29,

13   2019; and indicates she is receiving or seeking treatment (but does not describe any form of

14   treatment or identify any medical providers).  (AR 240–41.)

15        Pursuant to the SSA regulations, the aforementioned forms constitute evidence that is

16   "inherently neither valuable nor persuasive."  20 C.F.R. § 416.920b(c)(3)(i) (statements from

17   doctors or other medical professionals that a claimant is or is "not disabled, blind, able to work, or

18   able to perform regular or continuing work" are "inherently neither valuable nor persuasive to the

19   issue of" disability).  Accordingly, the ALJ was not required to discuss them.  See 20 C.F.R. §

20   416.920b(c) (stating the ALJ "will not provide any analysis about how [she] considered evidence

21   that is "inherently neither valuable nor persuasive to the issue of whether [the claimant is]

22   disabled or blind under the Act").  Based on the foregoing authorities, the Court concludes the

23   ALJ properly rejected the "Verification of Incapacity" forms signed by Licensed Therapists

24   Newsome and Thomas.

25        Furthermore, to the extent the ALJ was required to "consider" the forms in her decision,

26   the Court still reviews for legal error and substantial evidence.  Here, the Court concludes any

27   error in failing to explicitly discuss the verification forms is harmless because "it is clear from the

28   record that [any such] error was inconsequential to the ultimate nondisability determination."  See

Tommasetti, 533 F.3d at 1038; Molina v. Astrue, 674 F.3d 1104, 1117 (9th Cir. 2012), superseded by regulation on other grounds; see also Stout, 454 F.3d at 1055–56 (the court may not reverse the ALJ's decision where the error is harmless).  Simply put, the forms provide no information as to whether any examinations were conducted, whether any medical records were reviewed in support of the forms' conclusions, and there is no reference to any medical records in support of these "verification" forms, nor does Plaintiff proffer any such supporting medical records exist.  The Ninth Circuit has made clear that an ALJ may discount an unexplained check-the-box form opinion that does not contain any explanation of the basis of its conclusions, or that is unsupported or inconsistent with the treatment records from that medical provider.  Ford, 950 F.3d at 1155.  Plaintiff has not met her burden of establishing any such error is not harmless, Shinseki, 556 U.S. at 409; accordingly, Plaintiff's argument is unavailing.

### 3. Duty to Further Develop the Record

Buried in the middle of her argument that the ALJ improperly evaluated the medical opinions, Plaintiff contends the ALJ should have further developed the record because there is no physician opinion that reviews and encompasses the post-reconsideration period of medical records.  Relatedly, Plaintiff argues that, in failing to "further develop the record," the ALJ impermissibly "played doctor" and made independent medical findings in order to reject the opinions (ECF No. 13 at 9–10).  However, the Court finds Plaintiff's arguments to be unavailing.

Generally, "[t]he claimant has the burden of proving that [she] is disabled." Smolen, 80 F.3d at 1288.  However, "[t]he ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered....' " Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting Brown v. Heckler (Brown I), 713 F.2d 441, 443 (9th Cir. 1983)).  Nevertheless, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001); Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)); see also Brown v. Berryhill (Brown II), 697 Fed. App'x 548, 549 (9th Cir. 2017) ("Because the record evidence was not ambiguous and the record was sufficient to allow for proper evaluation of the evidence, the

1    ALJ was not required to re-contact Brown's doctors or further develop the record.).

2        Here, importantly, Plaintiff does not contend that the evidence in the record was

3    ambiguous.  Nor does the Court find either of the aforementioned circumstances to appear here.

4    Rather, the Court finds the record was adequate to enable the ALJ to evaluate the evidence

5    concerning the severity of Plaintiff's symptoms.  See, e.g., Agatucci v. Berryhill, 721 Fed. App'x

6    614, 617–18 (9th Cir. 2017).  Furthermore, Plaintiff's contention that the ALJ was required to

7    further develop the record solely because there is no physician opinion that reviews and

8    encompasses the post-reconsideration period of medical records is unavailing.  Notably, this

9    contention is unsupported in law.  Indeed, Plaintiff does not cite to any legal authority to support

10   this contention.  Rather, as discussed, Ninth Circuit caselaw demonstrates an ALJ does not need

11   to procure an additional physician opinion to review unexamined medical records where the

12   medical notes are unambiguous.  See Brown II, 697 Fed. App'x at 549 ("Because the record

13   evidence was not ambiguous and the record was sufficient to allow for proper evaluation of the

14   evidence, the ALJ was not required to re-contact Brown's doctors or further develop the

15   record.").  The Regulations also cut against Plaintiff's argument.  20 C.F.R. § 404.970, for

16   example, governs submitting written evidence to an ALJ; it expressly provides that all evidence

17   may be provided up to five days prior to the hearing before the ALJ, and permits evidence to be

18   submitted to the ALJ for review after that date (but before the ALJ has issued her decision) under

19   certain circumstances.  20 C.F.R. § 404.970(a)–(b).  This regulation necessarily contemplates that

20   medical evidence pertaining to the time period after the reconsideration decision may be reviewed

21   by the ALJ, but does not require the ALJ to obtain another medical opinion to interpret and

22   evaluate those records prior to issuance of her decision.  See also 20 C.F.R. § 404.970 (regulation

23   governing when the Appeals Council is obligated to review additional evidence submitted *after*

24   the ALJ issues a decision); Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th

25   Cir. 2012) (the Ninth Circuit has "routinely considered evidence submitted for the first time to the

26   Appeals Council to determine whether, in light of the record as a whole, the ALJ's decision was

27   supported by substantial evidence.").  Plaintiff's further develop the record argument therefore

28   fails.

To the extent she argues the ALJ has impermissibly substituted her own opinion for a doctor's professional interpretation of the record, Plaintiff's contention is also unavailing.  As previously noted, the RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c); Vertigan, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.") (citing 20 C.F.R. § 404.1545).  Further, it is within the ALJ's province to synthesize the medical evidence, resolve conflicts and ambiguities in the medical testimony, and determine credibility.  See Andrews, 53 F.3d at 1039; Batson, 359 F.3d at 1195; see also Lingenfelter, 504 F.3d at 1042 ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); Tommasetti, 533 F.3d at 1041–42 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); Benton, 331 F.3d at 1040 (where "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.").  Consequently, "[t]he ALJ's RFC determination need not precisely reflect any particular medical provider's assessment."  Althoff-Gromer, 2019 WL 1316710, at *13; Turner, 613 F.3d at 1222–23; Chavez, 654 Fed. App'x. at 375 (ALJ need not "parrot … exact descriptions of … limitations" to reach an RFC determination consistent with the medical record and claimant's limitations).

Finally, the Court notes that a showing of unfairness or prejudice resulting from any failure to develop the record is required for remand, Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997), and Plaintiff has not made this requisite showing.  Accordingly, Plaintiff's argument that the ALJ impermissibly interpreted the medical record for the period following the reconsideration decision and should have further developed the record is unavailing.

4.    RFC Determination

As to the ALJ's RFC determination, Plaintiff argues that, because the ALJ improperly

1 | rejected the opinions of Drs. Michel and Aquino-Caro, and Licensed Therapists Newsome and

2 | Thomas, she also failed to include relevant limitations in the RFC.  As such, Plaintiff argues the

3 | ALJ's RFC determination is not supported by substantial evidence.  (ECF No. 13 at 10–11.)

4 | However, having concluded that the ALJ properly evaluated the medical evidence, the

5 | Court finds Plaintiff's derivative step five argument to be unavailing.  See Stubbs-Danielson, 539

6 | F.3d at 1175–76 (rejecting a step five argument that "simply restates" arguments about medical

7 | evidence and testimony); Hairston v. Saul, 827 Fed. App'x 772, 773 (9th Cir. 2020) (summarily

8 | rejecting claimant's arguments that RFC and step-five findings were unsupported by substantial

9 | evidence as "derivative of her preceding arguments addressed and rejected above."); see also

10 | Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988) (acknowledging there is no requirement that

11 | testimony for which the ALJ has provided specific and legitimate reasons to discount be included

12 | in the hypothetical given the VE).

13 | **VI.**

14 | **CONCLUSION AND ORDER**

15 | In sum, the Court finds the ALJ properly synthesized the conflicting medical opinions

16 | concerning Plaintiff's functional limitations into the RFC determination based on the entire

17 | medical and non-medical record.  Further, this Court must defer to the decision of the ALJ where

18 | evidence exists to support more than one rational interpretation.  Drouin v. Sullivan, 966 F.2d

19 | 1255, 1258 (9th Cir. 1992); Burch, 400 F.3d at 679.  "As [the Court] cannot say that the ALJ's

20 | interpretation of the available evidence was not rational, the ALJ's conclusions were supported by

21 | substantial evidence."  Shaibi v. Berryhill, 883 F.3d 1102, 1108 (9th Cir. 2017).  Accordingly, the

22 | Court will not disturb the ALJ's decision with respect to her evaluation of the medical record and

23 | RFC determination.

24 | For the foregoing reasons, IT IS HEREBY ORDERED that:

25 | 1.   Plaintiff's appeal from the decision of the Commissioner of Social Security (ECF

26 | No. 13) is DENIED;

27 | 2.   Defendant's cross-motion for summary judgment (ECF No. 14) is GRANTED;

28 | and

3. The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Lisa Marie Torrecillas, and close this case.

IT IS SO ORDERED.

Dated:   **January 31, 2023**

UNITED STATES MAGISTRATE JUDGE